# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

1300

KA 14-00889

PRESENT: SMITH, J.P., PERADOTTO, CARNI, LINDLEY, AND WHALEN, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                              MEMORANDUM AND ORDER

SHAQUAR PRATCHER, DEFENDANT-APPELLANT.

---

THE LEGAL AID BUREAU OF BUFFALO, INC., BUFFALO (BARBARA J. DAVIES OF COUNSEL), FOR DEFENDANT-APPELLANT.

FRANK A. SEDITA, III, DISTRICT ATTORNEY, BUFFALO (NICHOLAS T. TEXIDO OF COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Supreme Court, Erie County (Christopher J. Burns, J.), rendered May 14, 2014. The judgment convicted defendant, upon a nonjury verdict, of murder in the second degree, burglary in the first degree (two counts) and criminal possession of a weapon in the second degree.

It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.

Memorandum: Defendant appeals from a judgment convicting him after a bench trial of, inter alia, murder in the second degree (Penal Law § 125.25 [3] [felony murder]). The conviction arises from a home invasion burglary during which the 96-year-old victim sustained, among other injuries, a subdural hematoma and so many broken facial bones that his skull remained distorted when he died approximately five months later.

We reject defendant's contention that the testimony of the two accomplices was insufficiently corroborated. The Criminal Procedure Law provides that a defendant "may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense" (CPL 60.22 [1]). Corroborating evidence is sufficient if it " 'tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the [factfinder] that the accomplice is telling the truth' " (*People v Reome*, 15 NY3d 188, 192, quoting *People v Dixon*, 231 NY 111, 116; *see People v Mohamed*, 94 AD3d 1462, 1463, *lv denied* 19 NY3d 999, *reconsideration denied* 20 NY3d 934). Therefore, contrary to defendant's contention, the statute "need not be read . . . to require that all corroboration that depends to any degree on the accomplice's testimony be ignored . . . There can be corroborative evidence that, read with the accomplice's testimony,

makes it more likely that the defendant committed the offense, and thus tends to connect him to it" (*Reome*, 15 NY3d at 194). Therefore, "some evidence may be considered corroborative even though it simply supports the accomplice testimony, and does not independently incriminate the defendant" (*id.; see People v Lipford*, 129 AD3d 1528, 1529), or if it " 'harmonized' " with the accomplices' testimony (*People v McRae*, 15 NY3d 761, 762, *rearg denied* 15 NY3d 902; *see People v Highsmith*, 124 AD3d 1363, 1364, *lv denied* 25 NY3d 1202).

Here, there was evidence from several sources corroborating the testimony of the accomplices. The testimony of the accomplices established the way in which the crime was committed, including that they and defendant used cell phones throughout the incident. In addition, one of the accomplices testified that, after the incident, defendant said that "the old man wouldn't shut up . . . so he had to hit him[, and] when he hit him, he felt his jaw getting soft." The accomplices also testified that they heard a gunshot as they fled the scene of the burglary, and defendant told one of them that he accidentally had shot himself in the leg while hopping a fence.

In support of that testimony, the People introduced corroborating evidence from several sources tending to show that the accomplices were telling the truth and that defendant was one of the perpetrators. First, there is overwhelming evidence establishing that the crime occurred in the manner in which the accomplices testified. The security system at the victim's home recorded the events that took place outside the home, and that video recording depicts the perpetrators making cell phone calls, exchanging a handgun, and entering the home through a window at night, then carrying away items of personal property when they later left the home. There is also overwhelming medical evidence establishing that the victim was savagely beaten during the incident. That evidence "may be considered corroborative even though it simply supports the accomplice testimony, and does not independently incriminate the defendant" (*Reome*, 15 NY3d at 194).

Moreover, there is also sufficient corroborating evidence tending to connect defendant with the commission of the crime. First and foremost, the People introduced evidence that defendant was treated two days after the incident herein for a gunshot wound to his leg, that he told the medical providers and a police officer that he sustained the wound two days earlier, i.e., on the day of the incident herein, and that the officer was unable to find any evidence corroborating defendant's version of how defendant had sustained the wound. In addition, although the video recording by itself is not clear enough to establish that defendant was one of the perpetrators, it is sufficiently clear to demonstrate that the accomplices are telling the truth about the events that occurred outside the home, including that a person who is consistent with defendant's height and build participated in the crime along with the accomplices. In addition, the People introduced in evidence cell phone records, call logs, and supporting testimony demonstrating where the subject cell phones were used, and that evidence establishes that cell phone calls were made as the accomplices testified. The People also introduced

expert medical testimony establishing that the victim sustained numerous facial fractures of his orbital, sinus, and jaw bones, which is consistent with defendant's statement that he felt the victim's "jaw getting soft."  Based on all the evidence, we conclude that the testimony of the accomplices was sufficiently corroborated inasmuch as the evidence " 'tend[ed] to connect the defendant with the commission of the crime in such a way as [could] reasonably satisfy the [factfinder] that the accomplice[s] [were] telling the truth' " (*id.* at 192; *see* CPL 60.22 [1]; *People v Robinson*, 111 AD3d 1358, 1358, *lv denied* 22 NY3d 1141).

Defendant further contends that the evidence is not legally sufficient to establish that the injuries that the victim sustained during the commission of the crimes were the cause of his death approximately five months later.  Although defendant moved for a trial order of dismissal, he did not contend in that motion that the victim's death was not the foreseeable result of the injuries the victim sustained during the commission of the crimes, and thus failed to preserve his legal sufficiency contention for our review (*see People v Gray*, 86 NY2d 10, 19; *see also People v Ingram*, 67 NY2d 897, 899).  In any event, it has long been the rule in New York that " '[i]f a person inflicts a wound . . . in such manner as to put life in jeopardy, and death follows as a consequence of this felonious and wicked act, it does not alter its nature or diminish its criminality to prove that other causes cooperated in producing the fatal result.  Indeed, it may be said that neglect of the wound or its unskillful and improper treatment, which were of themselves consequences of the criminal act, which might naturally follow in any case, must in law be deemed to have been among those which were in contemplation of the guilty party, and for which he is to be held responsible' " (*People v Kane*, 213 NY 260, 274).  Thus, "[f]or criminal liability to attach, a defendant's actions must have been an actual contributory cause of death, in the sense that they 'forged a link in the chain of causes which actually brought about the death' " (*Matter of Anthony M.*, 63 NY2d 270, 280).  Additionally, the "defendant's acts need not be the sole cause of death; where the necessary causative link is established, other causes, such as a victim's preexisting condition, will not relieve the defendant of responsibility for homicide . . . By the same token, death need not follow on the heels of injury" (*id.* at 280).

Here, the evidence established that defendant repeatedly struck the 96-year-old victim in the face and head, thereby fracturing the victim's orbit, sinuses, and jaw in numerous places and causing a subdural hematoma, and that many of those injuries had not healed at the time of his death approximately five months later.  Thus, we conclude that "the ultimate harm, i.e., death, was a 'reasonably foreseeable result of [that] conduct' " (*People v Cox*, 21 AD3d 1361, 1362-1363, *lv denied* 6 NY3d 753).  Although defendant's expert testified that the victim died of his advancing Alzheimer's-type dementia, the Medical Examiner testified that the injuries that the victim sustained in this attack were the cause of his death.  Thus, the court "was presented with conflicting expert testimony regarding the cause of death, and the record supports its decision to credit the

People's expert testimony" (*People v Fields*, 16 AD3d 142, 142, *lv denied* 4 NY3d 886; *see generally People v Miller*, 91 NY2d 372, 380). Consequently, we conclude that, although other possible causes of the victim's death were not eliminated, the medical evidence, viewed in the light most favorable to the prosecution, is legally sufficient to establish that defendant's acts "were at least a contributing cause of" the victim's death (*Anthony M.*, 63 NY2d at 281). We further conclude that, with respect to all of the charges, the evidence, viewed in the light most favorable to the People (*see People v Contes*, 60 NY2d 620, 621), is legally sufficient to support the conviction. Viewing the evidence in light of the elements of the crimes in this bench trial (*see People v Danielson*, 9 NY3d 342, 349), we further conclude that the verdict is not against the weight of the evidence (*see generally People v Bleakley*, 69 NY2d 490, 495).

Finally, the sentence is not unduly harsh or severe.

Entered:  December 31, 2015                    Frances E. Cafarell
                                               Clerk of the Court